GUIDRY, Judge.
Plaintiff-Appellee, Rodney Reddoch, sues to recover dividends in the amount of $675.00 alleged to be due him[1] by Calca-sieu Federal Employees Credit Union, Defendant-Appellant.
Plaintiff alleges that during the period from January 1, 1973 to March 31, 1974 he had on deposit with defendant the sum of $45,000.00. For the period from January 1, 1973 through December 31, 1973 the defendant paid six per cent (6%) per annum interest, payable quarterly, on all such deposits. In February of 1974, without prior or subsequent notice to plaintiff, defendant decided to discontinue the payment of interest quarterly and decided to pay interest on an annual basis, such policy to be retroactive to January 1, 1974. At the end of March 1974 plaintiff made demand upon defendant for payment of the first quarterly interest payment which was refused, he being then informed of the decision of the defendant’s board of directors that interest would be paid annually. On March 31, 1974 plaintiff withdrew the aforesaid amount and deposited it elsewhere. On the basis of the above plaintiff seeks to recover the sum of $675.00, that is 6% per annum interest on the $45,000.00 deposit for the period from January 1, 1974 to March 31, 1974. Defendant denies that it is indebted to plaintiff for any amount, and urges that Calcasieu is not obligated to pay dividends in any fixed amount and may not according to its by-laws pay dividends quarterly. Further, that dividends are payable only on shares fully paid up before December 1st and outstanding on December 30th of the fiscal year.
The trial court rendered judgment in favor of plaintiff for a sum equal to 6% per annum interest on $45,000.00 from January 19, 1974 through March 31, 1974, together with legal interest on such amount from date of judicial demand until paid. We reverse.
There is no dispute regarding the facts. Defendant is a corporation organized under the laws of Louisiana for the benefit of federal employees and their families in Calcasieu Parish. Plaintiff, who is the Clerk of the Federal District Court in Lake Charles was a member of the defendant credit union for many years, having once served as its president and having served on its board of directors for some 7 or 8 years. According to the by-laws of the defendant the Board of Directors authorize the declaration of dividends [1] (Article VI Sec. 4(c)) and may do so out of current earnings remaining after setting aside the reserve required by law, any such dividend being payable only on shares fully paid up before December 1st and outstanding on December 30th of the fiscal year (Article XIII).
For many years the credit union paid annual dividends in accordance with the provisions of its by-laws, however, in June of 1973, on motion of plaintiff who was then a Board member, the defendant resolved to pay dividends quarterly, this change in dividend payment being made retroactive to January 1, 1973. The minutes of the meeting at which this resolution was adopted contain the following notation regarding same:

"Feasibility of paying devidens (sic) by the quarters? Quarterly dividend (sic) were approved retroactive to Jan. 1st 1973, on a trial basis.” (Emphasis mine)

In October of 1973 the books of the defendant corporation were audited by the State Banking Department and at that time the President was verbally advised that the Credit Union could not legally pay quarterly dividends because its by-laws authorized the payment of dividends only on an annual basis. This verbal admonition was *388 followed by a written criticism from the State Auditor which was received by the President of the Credit Union in December of 1973. The by-laws of the Credit Union have never been amended so as to provide for the payment of quarterly dividends. On January 19, 1974 the annual stockholders meeting was held with the plaintiff being in attendance. At this meeting the President submitted his annual report which, although not mentioning the criticism received from the State Banking Department, did advise as follows regarding the payment of quarterly dividends during the year 1973, and the feasibility of continuing to pay same on that basis:

"If some of you have not noticed in your pass book or have not brought your book in to be brought up to date, the board voted to pay 6% quarterly. This may be a, one time only deal though, we will review this further when we check all our finances(Emphasis mine)

Plaintiff was not re-elected to the board of directors at the annual meeting his service on the board being terminated as of the date of the annual stockholder’s meeting. On January 28, 1974, at its regular meeting the newly constituted board of directors resolved to discontinue the payment of quarterly dividends effective as of January 1, 1974.
During the period from January 1, 1973 to March 31, 1974, plaintiff, his wife, and son were the owners of $45,000.00 of fully paid-up shares in the Credit Union. In late March of 1974 plaintiff made demand for payment of a quarterly dividend on the shares owned by him and his family which payment was refused. On March 31, 1974, at plaintiff’s request, defendant paid to plaintiff the sum of $45,000.00 in redemption of all shares owned by him and his family in the Credit Union.
The trial court in finding for plaintiff held that the President, as an officer of the corporation, in failing to advise plaintiff at the annual stockholders meeting of the criticism by the State Auditor deprived plaintiff of interest on the money held by the credit union for him. The trial judge reasoned that if plaintiff had been advised on January 19, 1974 that quarterly dividends would no longer be paid, he could then have protected his interest by re-investing his funds elsewhere. In so holding we find that the trial court fell into error.
In our view the President had no positive duty to report to the stockholders that the Credit Union had been critized for the payment of quarterly dividends and the record does not substantiate that his failure to do so prejudiced the rights of plaintiff. The evidence does not reflect that the Board of Directors determined to discontinue the payment of quarterly dividends solely because of the criticism from the State Auditor. If this were the only reason the prohibition against the payment of dividends in that manner could have been overcome by a simple amendment of the charter which presumably could have been accomplished in time to make a first quarterly payment in 1974. (By-laws Article XVI; LSA-R.S. 6:642) Although the admonition from the State Auditor may have been a factor considered by the Board in resetting its dividend payment policy it clearly was not the sole reason. When the quarterly payment policy was adopted the then Board did so on a trial basis. In the President's annual report the stockholders were reminded that quarterly dividend payments might be a “one time only deal” and were advised that such policy would be reviewed after a check of the Credit Union’s finances. Certainly from the record it can be concluded that the members of the board were aware that under the charter and under the laws of the State dividends to shareholders were payable only from current earnings remaining after setting aside the reserve required by law and that this factor was paramount in determining whether payment of dividends quarterly could be, continued. Although *389 the President in his annual report could have advised the stockholders of the criticism from the State Auditor he could not have then advised that the Credit Union would not continue to make quarterly dividend payments because this was not finally determined until the first Board meeting on January 28, 1974. Additionally, plaintiff was clearly not prejudiced by the President’s failure to mention in his annual report that the Credit Union’s quarterly dividend policy had been criticized by the Auditor. Plaintiff was no ordinary stockholder. He had served as a member of the Board of Directors for some seven or eight years. He served the Credit Union as its President and must have been familiar with its Charter and By-Laws. Plaintiff was instrumental in establishing the quarterly dividend payment policy and knew that such policy had been adopted on a trial basis. He was advised at the annual stockholders meeting that quarterly dividends might be a “one time only deal” and that such policy would be reviewed in light of the Credit Union’s finances. Plaintiff was not at liberty to close his eyes and ears to all this information and now demand payment of a dividend he would have received had the 1973 dividend policy been continued solely by reason of the fact that he was not advised of the State Auditor’s criticism. In any event the plaintiff, like other shareholders, joined the Credit Union and agreed to be bound by its charter and by-laws. The defendant does not contract with any of its shareholders to positively pay a dividend certain either quarterly, semi-annually or annually. The Credit Union, acting through its board of directors, is not obligated to pay any dividends whatsoever. The by-laws authorize the board to declare dividends but the payment is discretionary on an annual basis the amount of any such dividend depending upon current earnings remaining after setting aside the reserve required by law. Being under no obligation to pay dividends defendant was clearly not required to notify its shareholders of a change in dividend payment policy.
Plaintiff knew, or he certainly should have known, that he had no absolute right to expect to receive the dividend which he now asserts is due him. Had the appellee left his funds in the credit union he would have received the dividend at the end of 1974 as did all the other shareholders. Under the by-laws dividends are payable only on shares fully paid up and outstanding on December 30th of the fiscal year. Plaintiff having redeemed all stock owned by him and his family long prior to the end of the fiscal year which terminated on December 30, 1974 he is not entitled to any dividend payment for the months of January, February and March, 1974.
For the above and foregoing reasons the judgment of the District Court is reversed and it is now ordered, adjudged and decreed that plaintiff’s suit be dismissed with prejudice. All costs of court on both the trial and appellate level are to be paid by plaintiff.
REVERSED AND RENDERED.

. Plaintiff-Appellee sues for himself, individually, as head and master of the community of acquets and gains existing between him and his wife, Loretta Reddoch; and, as Administrator of the estate of his minor son, Tommy Reddoch.